# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DAVID A., <br><br> **Claimant,** <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br><br> **Respondent.** | No. 18 C 5082 <br><br> Magistrate Judge Jeffrey T. Gilbert |

## MEMORANDUM OPINION AND ORDER

Claimant David A. ("Claimant") seeks review of the final decision of Respondent Nancy A. Berryhill, Acting Commissioner of Social Security ("Commissioner"), denying Claimant's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 8.] The parties have filed cross-motions for summary judgment. [ECF Nos. 15, 20.] This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c). For the reasons stated below, Claimant's Motion [ECF No. 15] is granted in part, and the Commissioner's Motion [ECF No. 20] is denied. The Commissioner's decision is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

## I. PROCEDURAL HISTORY

Claimant filed applications for Disability Insurance Benefits ("DIB") and SSI on August 6, 2014, alleging disability beginning January 1, 2009. (R. 15.) Claimant's applications were denied initially on November 18, 2014, and upon reconsideration on March 18, 2015, after which Claimant requested a hearing before an administrative law judge ("ALJ"). (*Id.*) On May 16, 2017,

Claimant, represented by counsel, appeared and testifed at a hearing before ALJ Matthew Johnson. (R. 15, 35–37.) The ALJ also heard testimony from vocational expert ("VE") Lee O. Knutson. (*Id.*) At the hearing, Claimant, through his attorney, amended his alleged disability onset date to August 6, 2014. (R. 15.) Because this date was after Claimant's date last insured for DIB purposes (March 31, 2009), the amendment effectively withdrew Claimant's DIB claim. (*Id.*)

On June 30, 2017, the ALJ denied Claimant's claim for SSI. (R. 12–32.) The opinion followed the five-step evaluation process required by Social Security regulations. *See* 20 C.F.R. § 416.920(a)(4). At step one, the ALJ found that Claimant had not engaged in substantial gainful activity ("SGA") since his alleged disability onset date of August 6, 2014. (R. 17.) At step two, the ALJ found that Claimant had the following severe impairments: degenerative disc disease of the lumbar spine, attention deficit disorder/attention deficit hyperactivity disorder, and depression. (*Id.*) At step three, the ALJ found that Claimant does not have an impairment or combination of impairments that meets or medically equasl the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 17–19.) The ALJ then determined that Claimant had the residual functional capacity ("RFC")[1] to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can never climb ladders, ropes or scaffolds and can only occasionally climb ramps and stairs. The claimant can occasionally balance, stoop, kneel, crouch and crawl. The claimant can frequently reach overhead with his right and left upper extremities. The claimant can reach in all other directions on a frequent basis with his right and left upper extremities. The claimant can frequently handle and finger with his left hand and can frequently handle and finger with his right hand. The claimant can occasionally work in hazardous environments such as around unprotected heights, moving mechanical parts and operate a commercial motor vehicle. The claimant can assume no position for longer than forty-five minutes. If the claimant does need to sit, stand or walk for forty-five minutes at one time, he must be allowed to assume a different position for five minutes before resuming the prior position without abandoning his workstation or losing

---

[1] Before proceeding from step three to step four, the ALJ assesses a claimant's RFC. 20 C.F.R. § 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

2

concentration on his assigned work duties. The claimant can understand, carry out, remember and perform simple, routine and repetitive tasks; involving only simple, work-related decisions with the ability to adapt only to routine workplace changes.

(R. 19–20.)

At step four, the ALJ determined that Claimant did not have any past relevant work. (R. 25.) Then, at step five, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Claimant can perform, such as assembler and cashier. (R. 25–26.) Because of this determination, the ALJ found that Claimant was not disabled. (R. 26.) The Appeals Council declined to review the matter on May 23, 2018 (R. 1–5), making the ALJ's decision the final decision of the Commissioner and, therefore, reviewable by this Court under 42 U.S.C. §§ 405(g) and 1383(c)(3). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000). Judicial review is limited to determining whether the ALJ's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his or her decision. *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations omitted). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even where there is adequate evidence in the record to support an ALJ's decision, it will not be upheld if the ALJ did not "build an accurate and logical bridge from the evidence to [his] conclusion." *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal

quotations omitted). In other words, if the ALJ's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the ALJ's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008) (internal quotations omitted). The reviewing court may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

### III. ANALYSIS

On appeal, Claimant asserts that: (1) the ALJ erred in rejecting the opinion of his treating physician and by relying upon the outdated opinion of a non-examining state agency consultant; and (2) the ALJ erred in evaluating Claimant's subjective symptom allegations and by failing to address the third-party report of Claimant's friend, Linda Rizzute. [ECF No. 16] at 1, 10–18.

A.   **The Treating Physician's Opinion**

Claimant first contends that the ALJ improperly rejected the opinion of his treating physician, Dr. Larry Najera. [ECF No. 16] at 11–15. An ALJ must give controlling weight to a treating physician's opinion if it is both "well-supported" and "not inconsistent with the other substantial evidence" in the case record.[2] 20 C.F.R. § 416.927(c)(2); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). Because a treating physician has "greater familiarity with the claimant's condition and circumstances," an ALJ "must offer good reasons for discounting a treating physician's opinion." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations omitted); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Those reasons must be

---

[2] In January 2017, the Social Security Administration ("SSA") adopted new rules for agency review of disability claims involving the treating-physician rule. *See* 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017). Because the new rules apply only to disability applications filed on or after March 27, 2017, they are not applicable in this case. *See id.*

4

"supported by substantial evidence in the record; a contrary opinion of a non-examining source does not, by itself, suffice." *Gudgel*, 345 F.3d at 470.

"Even if an ALJ gives good reasons for not giving controlling weight to a treating physician's opinion, she has to decide what weight to give that opinion." *Campbell*, 627 F.3d at 308. To do this, the ALJ must, by regulation, consider a variety of factors, including: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the extent to which medical evidence supports the opinion; (4) the degree to which the opinion is consistent with the entire record; (5) whether the physician was a specialist in the relevant area; and (6) other factors that validate or contradict the opinion. *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014); 20 C.F.R. § 416.927(c)(2)–(6).[3] "An inadequate evaluation of a treating physician's opinion requires remand." *Cullinan v. Berryhill*, 878 F.3d 598, 605 (7th Cir. 2017).

In March 2016, Claimant began treating with Dr. Najera at the Pain Treatment Centers of Illinois. (R. 22, 542, 568–74.) From March 2016 through January 2017, Claimant saw Dr. Najera ten times on a nearly monthly basis for his back pain and for temporary care regarding his attention deficit disorder. (R. 542–74.) On October 19, 2016, after seeing Claimant for the eighth time, Dr. Najera completed a Physical Assessment Form. (R. 539–40, 542, 548–50.) In his October 2016 physical assessment, Dr. Najera indicated, among other things, that Claimant could frequently lift and carry less than 10 pounds and occasionally lift and carry 10–20 pounds; that he could walk less than one city block before he needed rest or experienced significant pain; and that he could

---

[3] Claimant is seeking SSI, so the Court cites to the regulations that govern SSI claims, which are set forth in 20 C.F.R. §§ 416.901 *et seq. McCaster v. Colvin*, No. 12 C 4059, 2014 WL 2158967, at *1 n.2 (N.D. Ill. May 23, 2014). Nonetheless, "[t]he standards for determining DIB and SSI are virtually identical," *id.*, and, specifically, the factors set forth in § 416.927(c) are identical to those set forth in the corresponding DIB regulation, § 404.1527(c). *Compare* 20 C.F.R. § 404.1527(c), *with* 20 C.F.R. § 416.927(c).

only sit for a total of one hour and stand/walk for a total of one hour per eight-hour workday. (R. 539.) Dr. Najera also opined that Claimant's symptoms would constantly interfere with his ability to concentrate and maintain his attention; that Claimant would need to recline or lie down more than what is allowed during typical breaks in a workday; that he would need 10 to 15 unscheduled breaks during the day, with each break lasting 30–60 minutes; and that Claimant would likely be absent from work more than four times a month because of his impairments or treatments. (R. 539–40.) If Claimant needed 30-minute breaks or was absent from work as frequently as Dr. Najera opined, he would be unemployable. (R. 65–66) (VE testimony that an individual who was off-task 15 percent of the workday or missed two days of work per month would not be employable).

Although recognizing that Dr. Najera treated Claimant, the ALJ gave his October 2016 opinion "little weight." (R. 23.) At the same time, the ALJ gave "great weight" to the opinion of state agency consultant Dr. Bernard Stevens, who never examined or saw Claimant. (R. 24.) The Court finds that remand is necessary because the ALJ failed to adequately and properly evaluate the weight to be given to Dr. Najera's opinion.

To begin, the ALJ did not support his decision to discount Dr. Najera's October 2016 opinion with "good reasons" supported by substantial evidence. *See Campbell*, 627 F.3d at 306; *Gudgel*, 345 F.3d at 470. Based on the belief that Dr. Najera offered his opinion in June 2016, the ALJ first reasoned that Dr. Najera "had only seen the claimant on a few occasions prior to issuing his opinion." (R. 23.) But the ALJ misread the evidence: Dr. Najera offered his opinion in October 2016,[4] and by that time, he had seen Claimant on eight occasions. (R. 542, 548–70.) Far from

---

[4] Although conceding this error, the Commissioner simultaneously asserts that "nothing in the record substantiates that October is the correct interpretation." *Compare* [ECF No. 21] at 3, 6, *with id.* at 6 n.4. This is incorrect. Dr. Najera's October 19, 2016 encounter record notes that a "[f]orm for disability will be

6

being "a harmless date misinterpretation," as the Commissioner contends, *see* [ECF No. 21] at 6, the ALJ relied upon the perceived infrequency with which Dr. Najera saw Claimant to give his opinion "little weight," even though the actual frequency (eight times over eight months) favored giving Dr. Najera's opinion *greater* weight. *See Costa v. Berryhill*, No. 17 CV 5068, 2018 WL 6621324, at *7 (N.D. Ill. Dec. 18, 2018) (the fact that a physician saw and examined the claimant "four times over several months" favored giving the physician's opinion more weight); 20 C.F.R. § 416.927(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."). The ALJ's first reason for giving Dr. Najera's opinion little weight is based on a misinterpretation of the evidence; as such, it is not supported by substantial evidence. *See Kaminski v. Berryhill*, 894 F.3d 870, 874 (7th Cir. 2018).

Next, the ALJ reasoned that Dr. Najera's opinion was "inconsistent with his own treatment notes and the other clinical exams in the record." (R. 23.) As the ALJ explained:

> In [Dr. Najera's] opinion, the claimant would need to take ten to fifteen unscheduled breaks a day that would last up to an hour each, the claimant could not walk a city block and he could not sit, stand or walk for more than one hour out of an eight-hour workday. Dr. Najera's treatment notes do indicate the claimant reported tenderness in his lumbar spine and that the claimant had a reduced range of motion in his lumbar spine with reduced sensation in his right leg. However, they also indicate the claimant walked with a normal gait, his motor strength and tone were normal and he had no neurological abnormalities.

(*Id.*) (internal record citations omitted). The ALJ further reasoned that although Dr. Najera opined that Claimant could sit for only an hour and would need to take 10 to 15 breaks per day, Dr. Najera's "treatment notes indicate he did not recommend any other treatment other than

---

filled out and [Claimant] can pick [it] up . . . next week." (R. 550.) This notation supports the conclusion that the assessment at issue was completed on or around the same date—October 19, 2016.

7

medications and there is no indication in his notes that the claimant ever reported he needed to take frequent breaks throughout the day." (*Id.*)[5]

There are several problems with the ALJ's reasoning. First, although the ALJ indicated that the findings of tenderness and reduced range of motion in the lumbar spine and reduced right-leg sensation were *consistent* with Dr. Najera's opinion, he then seemingly ignored these findings and focused on other treatment notes that were purportedly *inconsistent* with Dr. Najera's opinion. (*See* R. 23.) But an "ALJ may not 'cherry pick' from mixed results in order to demonstrate inconsistency." *Bochat v. Colvin*, No. 15-C-34, 2015 WL 4492660, at *7 n.3 (E.D. Wis. July 23, 2015); *see Campbell*, 627 F.3d at 306 ("An ALJ may not selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability."). It was not enough for the ALJ simply to acknowledge the tenderness, reduced range of motion, and reduced leg sensation findings; he was required to explain why they did not alter his conclusion as to the consistency between Dr. Najera's opinion and his treatment notes. *See Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) ("The ALJ must confront the evidence that does not support her conclusion and *explain why that evidence was rejected.*") (emphasis added). The ALJ did not do so. (R. 23.)

Second, the ALJ did not explain the purported inconsistencies between those portions of Dr. Najera's treatment notes indicating normal gait, motor strength and tone, and no neurological abnormalities, and Dr. Najera's opinion that Claimant would need 10–15 one-hour unscheduled breaks per day and had significant walking, sitting, and standing restrictions. (R. 23.) If an ALJ

---

[5] The Commissioner also contends that Dr. Najera's findings were "out-of-sync with [Claimant's] own admitted abilities" and indicated that Claimant was more functional and more active when on medications. [ECF No. 21] at 3–4. But the ALJ did not discount Dr. Najera's opinion on these bases, *see* R. 23, so the Commissioner cannot now offer them as justifications. *Hardy v. Berryhill*, 908 F.3d 309, 313 (7th Cir. 2018).

discounts a treating physician's opinion because it is inconsistent with the evidence, he "must explain the inconsistency." *Frobes v. Barnhart*, 467 F. Supp. 2d 808, 819 (N.D. Ill. 2006); *see Roddy v. Astrue*, 705 F.3d 631, 637 (7th Cir. 2013) ("The ALJ should have, but did not, explain why Dr. Wright's opinion about the severity of Roddy's pain is inconsistent with [certain MRI] findings."). Here, however, the ALJ merely listed certain findings from Dr. Najera's notes and certain aspects of his October 2016 opinion without any explanation as to why they conflict with each other. (R. 23.)

Nor are the alleged inconsistencies apparent. It is unclear why the frequency with which Claimant needs to take breaks during the day (or the duration of the breaks) would be affected by his gait, motor strength and tone, or lack of neurological abnormalities. It is similarly unclear why a lack of neurological abnormalities forecloses Claimant from being as restricted as Dr. Najera believes. The Court also does not see how normal motor strength and tone necessarily translate into an ability to walk, sit, or stand for a particular duration of time over and above what Dr. Najera opined. And an individual may have perfect gait but still be unable to walk more than a city block or stand/walk for more than an hour. To be sure, there may be some reasonable, supportable explanation as to why the findings identified by the ALJ undermine Dr. Najera's opinion regarding Claimant's need to take breaks and his sitting, standing, and walking restrictions. But the ALJ did not provide one. Without such an explanation, the Court cannot "understand the link between the evidence and the ALJ's decision." *Enuenwosu v. Berryhill*, No. 16 C 5719, 2017 WL 2684092, at *6 (N.D. Ill. June 21, 2017); *see also Clifford v. Apfel*, 227 F.3d 863, 874 (7th Cir. 2000) (explaining that a reviewing court "must be able to trace the ALJ's path of reasoning").

The ALJ likewise failed to explain why Dr. Najera's opinion is inconsistent with "other clinical exams in the record." (R. 23.) Indeed, the ALJ failed to even identify the "other clinical

9

exams" to which he was referring. (*Id.*) And, in fact, many of the other clinical examinations noted by the ALJ elsewhere in his decision resulted in findings consistent with Dr. Najera's examination findings. For instance, examinations performed by Dr. Abhishek Mehta revealed reduced range of motion in Claimant's lumbar spine and tenderness in his lower back, and an examination by Dr. Kevin Orr revealed reduced range of motion in Claimant's lumbar spine, as well as decreased sensation in Claimant's right leg. (R. 21–22.) These findings jibe with Dr. Najera's examination findings: tenderness and reduced range of motion in the lumbar spine and reduced sensation in the right leg. (R. 22–23.) Again, without a corresponding explanation as to why Dr. Najera's opinion conflicts with the other (unidentified) clinical examinations in the record, the Court cannot follow the path of the ALJ's reasoning. *See Clifford*, 227 F.3d at 874; *Enuenwosu*, 2017 WL 2684092, at *6.

Similarly, the ALJ failed to explain why a medication-only course of treatment was inconsistent with Dr. Najera's one-hour sitting restriction and allowance for 10–15 breaks per day. (R. 23.) Perhaps the ALJ believed that such a course of treatment was conservative and, thus, showed that Claimant's impairments were not so severe as to warrant Dr. Najera's opined-to restrictions. *See* [ECF No. 21] at 6–7; *see also Stiles v. Colvin*, No. 14 CV 5861, 2016 WL 2958324, at *7 (N.D. Ill. May 23, 2016) ("[T]he ALJ was entitled to discount Stiles's symptom allegations because of his routine and conservative treatment."). But the ALJ did not express this belief in his decision, so it cannot support his reasoning. *Hardy v. Berryhill*, 908 F.3d 309, 313 (7th Cir. 2018); *Jelinek v. Astrue*, 662 F.3d 805, 811–12 (7th Cir. 2011).

In any case, a medication-only treatment plan is not necessarily conservative. *See Huber v. Berryhill*, 732 F. App'x 451, 456 (7th Cir. 2018) ("The absence of recommendations for back surgery or narcotics does not suggest that [the claimant's] treatment was necessarily

conservative."); *Turner v. Colvin*, No. 12 CV 10229, 2014 WL 3610887, at *10 (N.D. Ill. July 22, 2014) (faulting the ALJ for failing to explain why a physician's decision to treat the claimant's "back pain with medication constituted conservative treatment"). Here, Dr. Najera prescribed Claimant strong pain medications (morphine sulfate, oxycodone HCl, and cyclobenzaprine HCl)[6] throughout their treatment relationship. (R. 550, 553, 556, 559, 561, 564, 566, 570.) Indeed, by October 2016, when Dr. Najera offered his opinion, Claimant was taking 60 mg of oxycodone three times a day and 10–20 mg of cyclobenzaprine at night. (R. 548–50.) Such a medication regimen does not strike the Court as "conservative." *See Dennison v. Colvin*, No. 14-cv-806-PP, 2015 WL 5714720, at *6 (E.D. Wis. Sept. 29, 2015) (noting that a number of courts have suggested that prescribing "narcotic pain medication . . . is not 'conservative' treatment"); *cf. Schomas v. Colvin*, 732 F.3d 702, 709 (7th Cir. 2013) (suggesting that the prescription of narcotic pain relievers indicates aggressive treatment); *Ramey v. Astrue*, 319 F. App'x 426, 429 (7th Cir. 2009) (same); *see also Fowler v. Colvin*, No. 1:13-cv-01092-TWP-MJ, 2014 WL 4840582, at *8 (S.D. Ind. Sept. 29, 2014) (questioning "whether treatment with high doses of narcotics such as OxyContin and methadone can be considered 'conservative' treatment").

Moreover, there could have been many reasons why Dr. Najera did not recommend surgery or more invasive treatments that do not reflect on Claimant's functional limitations. Dr. Najera

---

[6] Both morphine sulfate and oxycodone HCl are narcotic (opioid) analgesics used to help relieve or manage moderate to severe pain. *See* WebMD, Morphine Oral: Uses, https://www.webmd.com/drugs/2/drug-327-604/morphine-oral/morphine-extended-release-tablet-oral/details (last visited Apr. 29, 2019); RxList, Roxicodone (Oxycodone Hydrochloride), https://www.rxlist.com/roxicodone-drug.htm#description (last visited Apr. 29, 2019). Cyclobenzaprine HCl, also known as Flexeril, is used to relieve muscle spasms associated with acute, painful musculoskeletal conditions. RxList, Flexeril (Cyclobenzaprine HCl) https://www.rxlist.com/flexeril-drug.htm (last visited Apr. 29, 2019). Courts have considered all these drugs to be strong pain medications. *See, e.g., Wargo v. Colvin*, No. 12 C 3197, 2013 WL 3874062, at *8 (N.D. Ill. July 26, 2013) (characterizing Flexeril as a strong pain medication); *Sandell v. Prudential Ins. Co. of Am.*, No. 1:06-CV-0522-DFH-TAB, 2007 WL 4404487, at *2 (S.D. Ind. Dec. 13, 2007) (characterizing morphine and oxycodone as "strong, narcotic pain medications"); *Barton v. Astrue*, 549 F. Supp. 2d 1106, 1112 n.15 (E.D. Mo. 2008) (describing morphine sulfate as "a strong painkiller").

may have decided that surgery was not a good option because Claimant believed he could not keep any surgical site clean due to his "tenuous social history." (R. 568.) (Claimant told Dr. Najera at their first visit that he did not have a permanent residence and was "technically homeless," although he would stay with friends and at shelters.) (*Id.*) Ultimately, the ALJ did not identify any evidence that supports the notion that Dr. Najera's course of treatment was inconsistent with his opinion about Claimant's functional abilities. And by finding otherwise, "[t]he ALJ impermissibly 'played doctor' and reached his own independent medical conclusion" based on his own, unsupported inference about the nature of Claimant's treatment. *See Myles v. Astrue*, 582 F.3d 672, 677–78 (7th Cir. 2009) (criticizing an ALJ for concluding that the claimant's condition was less severe because she was treated only with oral medication and not with insulin therapy).

Third, the ALJ erred in discounting Dr. Najera's allowance for unscheduled breaks based on Claimant's failure to report a need "to take frequent breaks throughout the day." (R. 23.) Importantly, Dr. Najera opined about Claimant's need to take unscheduled breaks during an eight-hour *workday*. (R. 539.) But as Claimant has not worked since January 2006 (R. 304–05), there would be no reason for him to report to Dr. Najera that he needed to take frequent breaks throughout the workday. *See Eskew v. Astrue*, 462 F. App'x 613, 616 (7th Cir. 2011) ("The absence of major work restrictions in Eskew's medical records does not illuminate the question of her credibility—she was after all unemployed throughout the time in question."). Nor is there any indication that Claimant engages in any sustained daily activities from which he would need to explicitly "take a break," as an individual in the workplace might need to do. *Cf. Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016) (cautioning ALJs not to equate activities of daily living "with the rigorous demands of the workplace"). To the contrary, Claimant testified that a normal

day for him consists of going to his sister's house and lying on his side for five to six hours. (R. 52, 56–57.)

Prior to the hearing, Claimant reported that he lived in a tent at a campsite and that during a typical day, he would take his medications, make coffee, read or draw, go to a shelter or food pantry, get water from a cemetery, plan what to make for dinner, cook dinner, wash dishes, rest, "rug hook" for a few hours, take his medications, and then go to sleep. (R. 318–22.) These activities, which are not very "active" to begin with, largely are not ones that Claimant must perform at certain times of the day or for certain amounts of time. Thus, it is not surprising that Claimant did not report the need "to take frequent breaks" from performing these activities, as he generally had the flexibility to perform them only when he could (or needed) to do so. *See Moore*, 743 F.3d at 1126 (explaining that "full-time work does not allow for the flexibility to work around periods of incapacitation"); *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (noting that one "critical difference[] between activities of daily living and activities in a full-time job [is] that a person has more flexibility in scheduling the former than the latter").

Lastly, even if the ALJ had provided "good reasons" for affording Dr. Najera's October 2016 opinion less than controlling weight—and the Court does not believe he did—the ALJ was still required to address the factors listed in 20 C.F.R. § 416.927(c) to determine what weight to give the opinion. *Campbell*, 627 F.3d at 308; *Scrogham*, 765 F.3d at 697–98 & n.48 (indicating that the ALJ's failure to address the appropriate regulatory factors was not harmless). Social Security Ruling ("SSR")[7] 96-2p states that treating source opinions like Dr. Najera's "are still

---

[7] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000) (internal citations and quotations omitted); *see* 20 C.F.R. § 402.35(b)(1). The Court is "not invariably bound by an agency's policy statements," but it "generally defer[s] to an agency's interpretations of the

entitled to deference and *must* be weighed using all of the factors provided in" § 416.927. SSR 96-2p,[8] 1996 WL 374188, at *4 (July 2, 1996) (emphasis added). Here, the ALJ failed to address many of the factors enumerated in 20 C.F.R. § 416.927(c). Specifically, although the ALJ acknowledged that Dr. Najera was Claimant's treating physician, he did not recognize that Dr. Najera offered his October 2016 opinion after seeing Claimant eight times over eight months. (R. 22–23, 542, 548–74.) Nor did the ALJ consider that Dr. Najera works at a pain treatment center that specializes in treating the impairments and symptoms at issue here: back pain and degenerative disc disease. *See* Pain Centers of Illinois (Types of Pain We Treat), http://www.paincentersil.com/types-of-pain-we-treat.php (last visited Apr. 29, 2019).

The ALJ's failure to consider these factors in evaluating Dr. Najera's opinion was especially significant because he then gave "great weight" to the opinion of state agency consultant Dr. Stevens, who never examined Claimant. (R. 24); *see Paul v. Berryhill*, --- F. App'x ----, 2019 WL 643261, at *3 (7th Cir. Feb. 15, 2019) (finding that the ALJ wrongly discounted the opinion of an examining physician "for being based on a one-time examination" when, at the same time, he gave "great weight" to the opinion of a non-examining physician); *Hemminger v. Colvin*, No. 2:15-CV-159-JEM, 2016 WL 4926499, at *5 (N.D. Ind. Sept. 16, 2016) (finding the ALJ's failure to discuss the requisite regulatory factors "particularly concerning" because the ALJ gave greater weight to opinions from non-examining physicians than to opinions from physicians who had examined the claimant "multiple times over the course of several months"). Moreover, Dr.

---

legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009) (emphasis omitted).

[8] The SSA rescinded SSR 96-2p in connection with its new rules governing the analysis of treating physicians' opinions, but that rescission is effective only for claims filed on or after March 17, 2017. *See* Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 2017 WL 3928298, at *1 (Mar. 27, 2017).

Stevens's medical specialty is endocrinology,[9] which has little (if any) relation to Claimant's severe lower back impairment. (R. 17.) All these factors weigh in favor of giving Dr. Najera's opinion—not Dr. Stevens's—greater weight, *see* 20 C.F.R. § 416.927(c)(1), (2), (5), and had the ALJ properly considered these factors, he may have done so. *See Campbell*, 627 F.3d at 308. At a minimum, the ALJ was required to address the § 416.927(c) factors in some way and articulate how they impacted the weight he gave to Dr. Najera's opinion.

For these reasons, the ALJ did not offer substantial evidence for giving Dr. Najera's opinion "little weight," which is an error requiring remand. *See Gerstner v. Berryhill*, 879 F.3d 257, 263 (7th Cir. 2018). To be clear, the Court is not saying that the ALJ must give controlling weight to Dr. Najera's October 2016 opinion on remand. Rather, if the ALJ determines that the opinion is not entitled to controlling weight, he must explain this determination with good reasons supported by substantial evidence, and this explanation must address the factors set forth in 20 C.F.R. § 416.927(c).

### B.  Claimant's Subjective Symptom Statements

Because a remand is warranted on the above grounds, the Court need not conclusively determine whether the ALJ committed reversible error in evaluating Claimant's subjective symptom statements. However, the ALJ should take the opportunity on remand to reevaluate these statements in accordance with SSR 16-3p and 20 C.F.R. § 416.929. The ALJ should articulate how he evaluates the full range of evidence and then explain the logical bridge from the evidence to his conclusions about Claimant's subjective symptom allegations. The ALJ should then include in his RFC assessment any additional restrictions that he finds to be credible and "supported by the medical evidence." *Outlaw v. Astrue*, 412 F. App'x 894, 898 (7th Cir. 2011).

---

[9] Dr. Stevens's medical specialty code is "11" (R. 119), which corresponds to endocrinology. *See* Program Operations Manual System (POMS) DI 24501.004(B).

To provide additional guidance on remand, the Court offers the following observations. First, the ALJ's current subjective symptom evaluation suggests that certain examination findings—those that show normal neurological functioning, a normal gait, and normal motor strength, as well as EMG testing that shows mild neurogenic change in the right lower paraspinal muscles with no evidence of polyneuropathy—contradict Claimant's contention that he cannot walk more than a few blocks and that he experiences pain and numbness in his right leg. (R. 24–25.) The ALJ must consider and address the entirety of these examination findings, not just those portions that he believes support his conclusion. *Campbell*, 627 F.3d at 306 ("An ALJ may not selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability."). For instance, the 2016 medical record cited by the ALJ further explained that the "mild neurogenic change in the right lower paraspinal muscles" was, in fact, "consistent with lower L4-5 lumbar radiculopathy on the right side." (R. 568.) Thus, instead of contradicting Claimant's reported pain and numbness in his right leg, the EMG testing potentially supports it. *See* Lumbar Radiculopathy, https://www.spine-health.com/conditions/lower-back-pain/lumbar-radiculopathy (last visited Apr. 29, 2019) (explaining that when an L4-5 nerve is affected, radicular pain radiates into the leg and can be accompanied by numbness, tingling, muscle weakness, and loss of specific reflexes).

The ALJ must similarly explain why other identified examination findings that seem to support Claimant's contentions, such as the findings demonstrating reduced range of motion in Claimant's lumbar spine and reduced sensation in his right leg, do not warrant crediting Claimant's allegations. (R. 24–25.) Again, it is not enough for the ALJ to simply acknowledge these examination findings or any other evidence that may back up Claimant's contentions; he must "explain why that evidence was rejected." *Moore*, 743 F.3d at 1123. Ultimately, if the ALJ on

remand continues to believe that Claimant's allegations are inconsistent with this and other medical evidence, he must do a better job explaining why that is the case. *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) ("[T]he ALJ must [] explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review.").

Second, the ALJ found that Claimant's "back impairment was treated conservatively with medication[.]" (R. 25.) On remand, the ALJ must better explain what medication he believes constituted conservative treatment. Not all medication regimens are conservative, and the medication Claimant took at one time or another for his back impairment—which included Norco (up to three times per day), oxycodone HCl (up to four times per day), cyclobenzaprine HCl, morphine sulfate, and gabapentin—was far from conservative.[10] (*E.g.*, R. 21, 23, 378–79, 381–82, 384–85, 387–88, 418, 454, 457, 460, 497–504, 508–21, 523, 525–28, 550, 553, 556, 559, 561, 564, 566, 570.) Claimant also used a TENS unit in 2015. (R. 511, 515, 527–28.) Claimant's reliance on these treatment modalities may favor crediting, not discounting, his allegations. *See Dawn P. v. Berryhill*, No. 17 C 4707, 2019 WL 339603, at *4 (N.D. Ill. Jan. 28, 2019); *Murphy v. Berryhill*, No. 1:18cv118, 2019 WL 1123511, at *16 (N.D. Ind. Mar. 11, 2019).

Third, the ALJ discounted Claimant's allegations that he could not stand or walk for more than short periods of time because he reported "that he made trips to get water for cooking on a daily basis and he traveled daily by walking or riding a bicycle[.]" (R. 25.) But riding a bicycle does not involve standing or walking, so it is unclear how this activity is inconsistent with a limited ability to stand or walk. And walking to retrieve water or to go other places is not necessarily inconsistent with Claimant's alleged inability to stand or walk for long periods of time. Perhaps

---

[10] As already noted, oxycodone, cyclobenzaprine, and morphine sulfate are strong pain medications. So too are Norco and gabapentin. *See Dawn P. v. Berryhill*, No. 17 C 4707, 2019 WL 339603, at *4 (N.D. Ill. Jan. 28, 2019); *Kotara v. Berryhill*, No. 17 C 4278, 2018 WL 3993717, at *4 & n.5 (N.D. Ill. Aug. 21, 2018); *Buescher v. Berryhill*, No. 16-cv-616-JPG-CJP, 2017 WL 2633206, at *8 (S.D. Ill. June 19, 2017).

Claimant must frequently sit and rest whenever he walks anywhere, and maybe it takes him a long time to even walk short distances. Before discounting Claimant's allegations based on his ability to "travel[] daily by walking," the ALJ must inquire into and consider any such limitations. *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010) ("An ALJ may not ignore a claimant's limiting qualifications with regard to her daily activities."). The same is true for any other daily activities the ALJ considers in evaluating Claimant's subjective symptom allegations.

Lastly, in evaluating the credibility of Claimant's allegations, the ALJ should address the third-party statement provided by Linda Rizzute, Claimant's campmate and friend. (R. 340–47.) An ALJ should consider evidence provided by friends, such as Ms. Rizzute, "because it 'may provide insight into the severity of the [claimant's] impairment(s) and how it affects the individual's ability to function[.]'" *Perez ex rel. Velez v. Berryhill*, No. 16 C 7864, 2017 WL 3725505, at *6 (N.D. Ill. Aug. 29, 2017) (quoting SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006)). The ALJ "should consider the nature and extent of [Ms. Rizzute's] relationship with [Claimant], the consistency with other evidence, and other factors that tend to support or refute [her] statements." *Mazzuca v. Colvin*, No. 12 C 2907, 2013 WL 1343344, at *14 (N.D. Ill. Apr. 2, 2013). Specifically, if the ALJ finds that Ms. Rizzute's statement is consistent with Claimant's allegations—for example, the Commissioner contends that Ms. Rizzute primarily reiterates Claimant's allegations that he battled "ongoing back pain, could not sit or stand for long periods, and engaged in limited daily activities," *see* [ECF No. 21] at 10—such a finding "is not a reason to disregard" Mr. Rizzute's statement, but "a reason to find that [Claimant's] account was corroborated by a" third party. *See Brinley v. Berryhill*, 732 F. App'x 461, 466 (7th Cir. 2018).

## IV. CONCLUSION

For the reasons discussed in the Court's Memorandum Opinion and Order, Claimant's Motion for Summary Judgment [ECF No. 15] is granted in part, and the Commissioner's Motion for Summary Judgment [ECF No. 20] is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated:   October 21, 2019